*742 OPINION OF THE COURT
Eric R. Adams, J.
The matter comes before the court upon motion by petitioner, Genesee County Department of Social Services, pursuant to Family Court Act § 1039-b. Petitioner seeks a determination that the Department be relieved of its obligation to exercise diligent efforts to reunite respondent and her children.
Respondent is the mother of the children Carl and Patricia, twins born February 4, 2001. The petitioner filed a petition alleging these children are neglected children based upon respondent’s physical abandonment of the children. The children were placed in the care of the Department of Social Services on September 11, 2002, where they have remained to date. On November 21, 2002, respondent entered an admission to the allegations. The petitioner makes the current application based upon the termination of respondent’s parental rights to her children, H. and A., in prior separate proceedings.
The termination of respondent’s parental rights as to H. and A. was the subject of a proceeding under Social Services Law § 384-b (4) (d) filed March 2000. The matter proceeded to a fact-finding hearing after which a finding was entered that the respondent had permanently neglected those children. Subsequent to a dispositional hearing, an order was entered terminating respondent’s parental rights and freeing the children to be adopted. Respondent thereafter appealed and the Appellate Division affirmed the finding that the children had been permanently neglected but returned the matter to the Family Court for further proceedings to determine whether respondent’s parental rights should be terminated. In April 2002, the parties entered a stipulation that judgment be suspended; however in October 2002, petitioner filed a petition alleging respondent had violated the terms of the suspended judgment. Respondent, represented by counsel, subsequently admitted to the allegations of the violation petition. Respondent further waived preparation of an updated dispositional report after being warned of the intention of the Department to seek termination of her parental rights and that the court would, based upon the information then available, likely grant that request. Respondent further waived her right to appeal such determination. Thereafter, respondent’s parental rights to the children, H. and A., were terminated.
Family Court Act § 1039-b (b) provides, in pertinent part: “reasonable efforts to make it possible for the children to return *743 safely to his or her home shall not be required where the court determines * * * (6) the parental rights of the parent to a sibling of such child have been involuntarily terminated * * *” (emphasis added). The issue presented is whether respondent’s admission that she violated the suspended judgment relating to her other children transforms that proceeding into a “voluntar/’ termination so as to preclude its use as a prerequisite for this application. She correctly points out respondent gave up her right to a fact-finding hearing as to the violation of the suspended judgment and, even further, her right to appeal the determination of the trial court. It is also without question that she did so knowing that such action would likely result in a permanent termination of her parental rights to those children. Respondent argues that the act of an admission, knowing the result of that admission, makes the result voluntary. Respondent cites Matter of Jasbin H. (184 Misc 2d 23 [Earn Ct, Oneida County 2000]) in support of that position. This court respectfully declines to follow such logic.
Family Court Act § 1039-b was enacted in 1999 (L 1999, ch 7, § 43) as part of the Adoption and Safe Families Act (ASFA). That legislation was enacted as New York’s effort to comply with federal legislation (42 USC § 671) which mandated the states adopt legislation implementing directives affecting children in foster care settings in order to remain eligible for federal funds under title IV-E of the Social Security Act. The language of Family Court Act § 1039-b (b) is taken directly from the federal statute 42 USC § 671 (a) (15) (D) (iii). The congressional findings issued in support and explanation of that legislation state, in part:
“The Adoption and Safe Families Act * * * promotes stability and permanence for abused and neglected children by requiring timely decision making in proceedings to determine whether children can safely return to their families or whether they should be moved into safe and stable adoptive homes or other permanent family arrangements outside the foster care system.” (Pub L 106-314, 114 US Stat 1266.)
Black’s Law Dictionary defines an involuntary act as that which is performed with constraint or with repugnance or without the will to do it (4th ed 1968). The courts have never imposed such a strict standard in determining a plea or stipulation was voluntary. Courts have accepted and found binding a plea of guilty even though the defendant was steadfastly *744 unwilling to acknowledge his participation in the acts constituting the crime of which he was accused. (North Carolina v Alford, 400 US 25 [1970].) The courts have focused on whether the defendant made a conscious decision based upon an informed consideration of the circumstances and alternatives available to him or her. (Alford, supra at 31.)
The language of Family Court Act § 1039-b (b) cannot be equated to a standard of whether the respondent made an informed and knowing consent to the imposition of judgment. The purpose of the legislation is to promote timely decision making as to the future of children in the foster care system. The focus is not the protection of the rights of the parent but rather the promotion of the inherent right of the child to a stable and safe home. A determination whether a termination of parental rights is voluntary must be made within the context of that legislative purpose. Paragraphs (2) through (5) set forth a series of crimes a conviction of which the State Legislature has determined warrants the suspension of reasonable efforts to reunite the family. The gravamen of these particular crimes is that they evidence such a skewed understanding on the part of the respondent of his or her duties and responsibilities as a parent, and therefore such a risk to the safety and stability of the child, that attempts to rehabilitate the respondent and reunite the family are not warranted. The same has been determined as to the parent that has subjected the child to “aggravated circumstances” (Family Ct Act § 1039-b [b] [1]). The fact that the respondent pleads guilty or admits the existence of aggravating circumstances does not lessen the severity of the circumstances the Legislature has determined to warrant a suspension of reasonable efforts. In like manner, that a respondent admits that circumstances exist that warrant a permanent severance of their parental rights does not lessen the gravity of those circumstances. The only truly voluntary termination of parental rights in the Family Court occurs within the process of a surrender executed pursuant to Social Services Law § 383-c or § 384. Any termination resulting from the entry of an order committing guardianship and custody to an authorized agency upon a determination pursuant to Social Services Law § 384-b is presumptively involuntary.
The Congress and State Legislature have established strict time frames during which decisions must be made and plans effectuated to return children in foster care placement to their biological parents or to eliminate restrictions so as to allow the children to be placed in alternative, safe and permanent homes. *745 Indeed, modifications to section 384-b (1) of the Social Services Law mandate the filing of termination of parental rights proceedings within three months of the minimum time period necessary to establish a statutory basis to terminate parents’ rights.[1] An interpretation of section 1039-b (b) that allows a respondent to control and delay the “timely decision making” that lies at the heart of the ASFA legislation, and to then avoid its consequences by consenting to the inevitable, is inconsistent with the stated purpose of that legislation.
The concluding language of section 1039-b (b) provides the court may order reasonable efforts on the part of the Department of Social Services if it finds that certain mitigating factors exist. This language allows the court a level of discretion to avoid an inappropriately harsh result. Such a determination raises an issue of fact that must be determined after a hearing.
Social Services Law § 384-b (7) (a) mandates that an authorized agency use diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child. To be relieved of that statutory obligation, the authorized agency bears the burden of showing why such efforts should not be required. However, here the State Legislature has determined that if certain enumerated circumstances exist, reasonable efforts to return a child to his or her home are not required (Family Ct Act § 1039-b [a]). Once the existence of one or more of the enumerated circumstances are established, by clear and convincing evidence, the burden of coming forward with evidence that reasonable efforts are nonetheless warranted falls to the respondent. This shift of obligation is supported by the concluding language of section 1039-b (b). The findings the court must make to require reasonable efforts are phrased in the language the parent would be attempting to prove.[2]
While the parties stipulated to the court’s consideration of certain records, there is a confusion as to what reports and files. In light of the gravity of the issue presented, the court is constrained to schedule further proceedings to confirm the rec *746 ords to be reviewed and whether any party seeks to submit any further evidence.

. Social Services Law § 384-b (3) (l) (i) while using the mandatory direction that the authorized agency “shall” file does provide certain exceptions to the mandatory filing that must be determined and documented on a case-by-case basis.

. Had the Legislature intended to place this burden upon the authorized agency it would seem the court would be called upon to determine that providing reasonable efforts would be contrary to the best interests of the child, contrary to the health and safety of the child and would likely not result in reunification in the foreseeable future.