Matter of Jaime S.E. (2004 NY Slip Op 50866(U))

[*1]

Matter of Jaime S.E.

2004 NY Slip Op 50866(U)

Decided on August 6, 2004

Family Court, Monroe County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 6, 2004

Family Court, Monroe County
In the Matter of the Commitment of Guardianship and Custody Pursuant to Social Services Law §384-b of Jaime S.E. A Child Under the Age of Eighteen Years Alleged to be Permanently Neglected by ENEDINA E., Respondent.
B-10683-03

Alecia Spano, Esq.
Deputy County Attorney
Attorney for Petitioner
Nigos Karatas, Esq.
Attorney for Respondent
Edward J. Orlando, Esq.
Legal Aid Society
Law Guardian

Joan S. Kohout, J.
This is the second petition filed by the Monroe County Department of Human and Health Services ("DHHS") requesting the termination of parental rights of Enedina E. concerning her son Jaime S.E., (born 8/10/99) based on allegations of permanent neglect. The first permanent neglect petition was dismissed on March 22, 2002 after trial due to the failure of DHHS to prove that it had provided diligent efforts to assist the respondent (see Social Services Law §384-b [7][a]).
The present petition, which was filed on September 19, 2003, alleges that Ms. E. permanently neglected Jaime by failing to plan and visit with her son and that Jaime should be [*2]freed for adoption. Ms. E. appeared and counsel was assigned for her. Additionally, the law guardian for Jaime was reassigned to protect his interests.
Ms. E. opposes the petition to terminate her parental rights. A fact-finding hearing was held over several dates. At the conclusion of the trial, the respondent argued and the law guardian recommended that the petition be dismissed because the petitioning agency had again failed to prove that it exercised diligent efforts to strengthen the parent-child relationship as required by Social Services Law §384-b [7][a].
The court agrees with the respondent and the law guardian that the petitioner has failed to diligently assist the respondent and that the petition must be dismissed.

Legal Background
The history of this case highlights the difficulties that DHHS has in providing services to Spanish speaking parents and their children. Not only was respondent's child placed into a non-Spanish speaking foster care home, the agency repeatedly failed to arrange for Spanish speaking counselors to assist Ms. E. and for several years ignored the court's orders to encourage the child's language and cultural heritage.
Jaime S.E. is Enedina E.'s youngest child. Jaime was placed in foster care shortly after his birth in August 1999. Ms. E. consented to a finding of neglect regarding Jaime (see Family Court Act §1051) and a dispositional order was made in September 1999 including placement in foster care for Jaime. The order also directed that Ms. E. participate in substance abuse evaluation and treatment, mental health treatment and domestic violence counseling, as well as parenting training. Since that time, there have been numerous testimonial hearings relative to the placements, service plans and long term goals for Jaime. The court has taken judicial notice of the decisions and orders resulting from these hearings, as well as other orders that were made by stipulation.
At the time Jaime was placed in foster care, his older five siblings were already in foster care based upon a consent finding of neglect against Ms. E.. On March 24, 2000 this court filed a decision and order after a permanency hearing continuing foster care for the five oldest children and approving the agency's permanency goal of return to parent. At that time, Ms. E. was directed to obtain mental health and substance abuse evaluations and DHHS was directed to comply with a plan for reunification of the family with particular emphasis on maintaining the culture and language of the children. The agency was directed to diligently search for Spanish speaking foster homes for the children and to "provide meaningful exposure to Spanish language for the children, sufficient for them to learn the language and begin to communicate in Spanish with their mother" (Decision and Order dated March 24, 2000 at page 5).
On October 18, 2000 a second decision and order was made after a permanency hearing for Jaime. The court continued foster care and adopted the same visitation and service plan established for the older children in the March 2000 decision and order. The court noted that the agency had not located a Spanish speaking foster home nor had it provided services to enhance the children's cultural heritage as directed in the March 2000 order (Decision and Order dated October 18, 2000 at page 3).
In June 2000 DHHS filed a permanent neglect petition requesting termination of parental rights concerning all six of the E. children. The petition regarding Jaime was dismissed after trial due to the failure of DHHS to prove that it provided diligent efforts to assist the respondent (see [*3]Family Court Act §614 [c]; Social Services Law §384-b [7][a]). In particular, the court found that "Jaime's situation is unique in his sibling group" since he never lived in a Spanish speaking home and knows his mother only through agency conducted supervised visitation. Despite the obvious barriers to reunification that these issues raised, no "specialized help was offered to Ms. E. to develop a positive relationship" with her son (Decision and Order dated March 22, 2002 at page 12). Permanent neglect was proven regarding the oldest five children, who had been in foster care during an earlier one year period when the agency had provided Spanish speaking casework services, as well as diligent helpful assistance to the respondent. A suspended judgment for one year was granted regarding the older children (see Family Court Act §633).
On December 27, 2000 the court issued a decision and order with respect to a second permanency hearing held for the older five children. That decision and order resulted in an extension of placement and a modified service plan. At that time, the court found that during the previous year the agency had not complied with the last court order and in particular, that the agency failed to make a reasonable effort to move the children to a Spanish speaking foster home as directed, promote the children's language and culture or provide "meaningful casework assistance to the respondent" (Decision and Order filed December 27, 2000 at page 7). The agency was again ordered to "promote the children's cultural heritage and language" (Decision and Order filed December 27, 2000 at page 8) by searching for a Spanish speaking foster home, providing a Spanish speaking worker to supervise visitation and providing exposure to the Spanish language sufficient for the children to begin to communicate with their mother in Spanish. The court determined that the proper permanency goal continued to be return to parent.
On February 7, 2001 the parties appeared before a different judge and agreed to extend foster care for Jaime, adopting most of the service plan the court established for the older children two months earlier.
On January 24, 2002 a decision and order was made in the next yearly permanency hearing, this time concerning all of the children. The court found that Ms. E. had been sent by the agency to a non-Spanish speaking evaluator and as a result little progress had been made in the service plan. Although the agency was able to independently contract with a Spanish speaking therapist, the assigned caseworker failed to do so. "Instead, the respondent was sent to a series of appointments with non-Spanish speaking evaluators resulting in an increasing level of frustration on the respondent's part and the lack of a useful evaluation" (Decision and Order dated January 24, 2002 at page 11). The agency finally commenced services to promote the children's language and culture. However, Ms. E.'s case was still assigned to DHHS caseworker Richard Jacobs, who did not speak Spanish and who "has considerable difficulty providing meaningful casework assistance to the respondent" (Decision and Order filed January 24, 2002 at page 10). Again, the court noted its prior findings, which were based upon the opinion of the agency worker Raquel Martinez, that Ms. E. needs Spanish speaking service providers. Ultimately, the court determined that the agency for the second time failed to make reasonable efforts to promote the reunification goal set by the court in the last permanency hearing.
On March 22, 2002 a decision and order was made dismissing the first permanent neglect petition as to Jaime finding that DHHS had failed to prove that it provided diligent efforts to strengthen the relationship between Jaime and his mother. In particular, the court found that DHHS had failed to comply with the court's order to encourage the children's culture and [*4]language, failed to address the respondent's language difficulties and failed to provide the respondent with needed services (Decision and Order dated March 22, 2002 at page 10).
In the same March 22, 2002 decision and order permanent neglect was established for the oldest five children based in part on proof that appropriate assistance had been provided by two Spanish speaking workers during the early months that the oldest children were in foster care, including the eleven months prior to Jaime's birth. A suspended judgment order was made by consent concerning the oldest children on May 1, 2002 (see Family Court Act §§631[b];
633). [FN1]
The next permanency hearing concerning Jaime and his siblings resulted in a decision and order dated December 23, 2002. At that time, the court found that an extension of foster care was consistent with Jaime's best interests, but also determined that the agency failed to comply with the January 2002 court order and failed for a third time to provide reasonable assistance to the respondent (see Family Court Act §1055 [b][iv][B][4]; see also Family Court Act §1055 [b][iv][A][3]). Specifically, the court found that the agency failed to assist the respondent with housing and had once again failed to arrange a mental health evaluation for the respondent with a Spanish speaking counselor.
No appeals were taken by DHHS from any of the adverse orders described above. Thus, the prior findings against the agency are binding on it in this proceeding (see Matter of Julian P.H., 177 Misc.2d 176 [Fam Ct Kings Cty 1998], affd 254 AD2d 416 [2nd Dept 1998]).
The findings against the respondent, however, were rendered based upon a less stringent burden of proof and using more the flexible evidentiary rules allowable in permanency hearings (see Family Court Act §1046 [b][i], [c]) and, thus, are not res judicata in reference to her interests (see Matter of Julian P.H., 177 Misc.2d 179-180, affd 254 AD2d 416 [2nd Dept 1998]).
Findings of Fact
In August 1999 Jaime was placed in foster care shortly after his birth and eleven months after his five siblings were placed in foster care on a separate neglect case. Jaime has continued in foster care since that time. He presently resides in a foster home with his five other siblings.
Shortly after Jaime's birth, the case was transferred to a non-Spanish speaking DHHS caseworker, Richard Jacobs, who had difficulty communicating with Ms. E. and did not arrange for the needed assistance, all of which contributed to the dismissal of the first permanent neglect petition concerning Jaime in 2002 and three permanency hearing findings in December 2000, January 2002 and December 2002 that the agency failed to provide reasonable efforts to assist Ms. E.
At the fact-finding hearing in this permanent neglect case, the petitioner presented testimony from three DHHS caseworkers and one caseworker employed by Ibero-American Action League ("Ibero"), who worked under contract with the DHHS. Ms. E. also testified.
[*5]
As previously noted, the petitioner is bound by this court's three prior permanency hearing decisions that found that DHHS failed to make reasonable efforts to assist the respondent during a period beginning in 2000 and ending on December 24, 2002. Additionally, the petitioner is bound by the court's determination that it failed to provide diligent efforts to help the respondent as outlined in the Decision and Order made March 22, 2002 dismissing the first permanent neglect petition concerning Jaime.
As a result, the relevant period in this permanent neglect case is from December 24, 2002 when the last finding was made that the agency failed to make reasonable efforts to assist the respondent through September 19, 2003, when this petition was filed (see Family Court Act §624).
Caseworker Richard Jacobs testified that he was assigned to the respondent's case in April 2000 and transferred the case in December 2003. Throughout that period, DHHS repeatedly failed to provide Ms. E. and Jaime with essential Spanish language casework and therapeutic services.
Caseworker Richard Jacobs does not speak Spanish. As a result, it was difficult for him to communicate with Ms. E. regarding anything but the simplest matters. It was not until June 2001, in response to the order of the court, that DHHS arranged for a bi-lingual caseworker from Ibero to be present for visits and to translate for Mr. Jacobs. The Ibero worker, however, did not provide other services for Ms. E.
Mr. Jacobs testified that he worked with the respondent on maintaining stable income, housing, mental health and substance abuse treatment. Mr. Jacobs did not testify to any assistance he provided to the respondent to resolve those issues, although he arranged for regular visitation to be provided to Ms. E. and her children, including Jaime.
Mr. Jacobs testified that as of August 2002 Ms. E. was consistently attending weekly visits with Jaime and his siblings, but had not visited consistently during an earlier period when visits were offered three times per week. Mr. Jacobs acknowledged that Ms. E. repeatedly requested that visits be at her home, but that the agency never granted her requests. In the decision and order dated March 22, 2002 on the permanent neglect petition that was previously dismissed concerning Jaime, the court found that "[t]he relationship between the agency and respondent deteriorated after Ms. Martinez (the previous Spanish speaking caseworker) transferred the case to Richard Jacobs. " The transfer was particularly difficult because Mr. Jacobs did not speak Spanish (Decision and Order dated March 22, 2002 at page 7).
It was not until June 2001 that Glenda Rivera from Ibero was assigned to help interpret for the caseworkers during supervised visitation between Ms. E. and her children at the Department of Human and Health Services' Offices. Ms. Rivera testified that her only roles were to translate for the DHHS caseworkers during visitation and to document in her notes what occurred . On one occasion Ms. Rivera also interpreted during a meeting between Mr. Jacobs and Ms. E. Ms. Rivera continued to assist periodically until mid-2003 and then again assisted toward the end of 2003.
Ms. Rivera testified that Ms. E. interacted with her six children during visitation and that the children were often "rowdy." There were times when the children, including Jaime, were physical with each other and times when Ms. E. knocked down Jaime's blocks while they were playing.
[*6]
Ms. Rivera would interpret instructions or requests from the non-Spanish speaking DHHS workers for Ms. E. For example, on March 10, 2003 Ms. Rivera asked Ms. E. at the request of supervising DHHS worker Janet Spenser to quiet the children, which was a frequent request. Ms. E. responded, "How can I keep six children quiet in this small room?" Ms. Rivera observed that Ms. E. then tried to quiet down the children.
Ms. Rivera's testimony concerning her conversations with Ms. E. are entitled to substantial weight since she directly spoke with the respondent in Spanish. The English speaking caseworkers, on the other hand, were required to use an interpreter, except for the simplest communications. Their testimony regarding the respondent's statements were, therefore, filtered through the third party interpreter.
At the end of December 2002, Department of Human and Health Services caseworker Luz Gonzalez was assigned to the E. case. Ms. Gonzalez is bi-lingual and communicated with Ms. E. in Spanish. During her first home visit with Ms. E. in January 2003, Ms. E. told Ms. Gonzalez that she wanted to cooperate with the agency and wished for her children to return home to her. At that time, Ms. E. was attending substance abuse treatment at Restart, where she received one-on-one counseling from Spanish speaking counselor Guillermina Torres. Ms. Gonzalez and Ms. E. discussed the need to continue in substance abuse treatment and maintain stable housing and income.
Ms. Gonzalez supervised visits in January 2003 and then again in September 2003. In between those dates Ms. Gonzalez was out on medical leave and the case was managed by Senior DHHS caseworker Janet Spenser, who was assisted at visitation by Glenda Rivera and other Ibero workers. Ms. Spenser, who does not speak Spanish, supervised visits at the DHHS offices and also at the Monroe County Jail during a period when Ms. E. was incarcerated during the summer of 2003. All meaningful conversations between Ms. Spenser and Ms. E. occurred with the assistance of a Spanish speaking interpreter. Ms. Spenser acknowledged that "we didn't do well" without an interpreter.
Even though Ms. Spenser did not speak Spanish, she arranged for visits and made the visits more positive visits by adding structure and activities. Ms. Spenser also met with Ms. E. and her Spanish speaking substance abuse treatment counselor and supported Ms. E.'s participation in both mental health counseling and substance abuse treatment.
During 2003 while Ms. Gonzalez and Ms. Spenser were assigned to the case, Ms. E. was participating in substance abuse treatment and mental health treatment with Spanish speaking therapists. Treatment temporarily stopped during the summer of 2003 while Ms. E. was incarcerated, but plans were made with the caseworkers to resume treatment upon her release.
Ms. E. testified at the trial and explained that she did what the caseworkers requested , including having multiple evaluations and receiving treatment for substance abuse issues and mental health. Ms. E.'s primary language is Spanish. She speaks "broken English" and has always had an interpreter assist her in court proceedings. There were times when Ms. E. was sent for appointments, but could not communicate with the English- speaking individuals who were to evaluate her. There were also times when no Spanish speaking caseworker was available at visits.
During the periods when Ms. E. had a Spanish speaking caseworker or Spanish speaking therapists, she attended the visits offered and attended the recommended treatment. When she [*7]was assigned an English speaking worker, her relationship with the agency deteriorated and the frequency of visitation attendance generally declined.
Discussion
The petitioning agency must prove that Ms. E. permanently neglected Jaime by clear and convincing evidence (Family Court Act §622; Santosky v. Kramer, 455 US 745 [1982]). The threshold issue is whether the agency provided "affirmative, repeated, and meaningful" diligent efforts to assist the parent to remedy her problems and reunite the family (Matter of Sheila G., 61 NY2d 368, 385 [1984]; see also, Matter of Jamie M., 63 NY2d 388 [1984]).Only after that question is resolved in the affirmative does the court determine whether the parent failed to plan and/or visit the children for a continuous period of one year preceding the filing of the petition and while the children were in foster care.(Matter of Sheila G., 61 NY2d 368, 385-386 [1984]; Matter of Ericka M., 285 AD2d 986 [4th Dept 2001]; Social Services Law §384-b [7]). It is not until the dispositional stage of the case, after a finding of permanent neglect has been made that the child' best interest is considered (see Family Court Act §623),
The requirement that the agency first prove diligent efforts before parental rights may be terminated is grounded in the strong and long-standing public policy and "cultural judgment that society should not terminate the parent-child relationship unless it has first attempted to strengthen it" (Matter of Leon RR,. 48 NY2d 117, 126 [1979]).
In order to be deemed diligent, the agency's efforts to assist the parent must be tailored to the parent's specific needs and address the problems that contributed to the child's removal from home, including counseling, assistance with planning, help with housing, financial issues and scheduling meaningful visitation (Matter of Sheila G., 61 NY2d 368, 385-386 [1984]);Matter of Jamie M., 63 NY2d 388, 394 [1984]; see also Social Services Law §384-b [7][f]).
The petitioner does not claim that it was excused from its responsibility to make diligent efforts to help the respondent (see SSL §384-b [7][e]). Nor does DHHS suggest that the exercise of diligent efforts to strengthen the family was contrary to Jaime's best interests (Social Services Law §384-b [7][a]; see also Matter of Ray A.M., 37 NY2d 619 [1975]) or that Ms. E. was an "utterly un-co-operative or indifferent parent" who was not receptive to its efforts (see Matter of Sheila G., 61 NY2d 368, 385 [1984]).
Instead, the petitioner suggests that there are sufficient periods of time when added together to provide one year of diligent efforts. The court can find no authority that would permit such an approach and finds that even if such a statutory interpretation were permissible the petitioner failed to prove that it provided diligent efforts for twelve months.
While the statute permits the petitioning agency to seek a finding of permanent neglect based on any one year period prior to the commencement of the proceedings (see Social Services Law §384-b [7][a]), "a continuous period of one year" is contemplated (Matter of Star Leslie W., 63 NY2d 136, 146 [1984]; see also, Matter of Verona Jonice N., 177 AD2d 115, 119 [1st Dept 1992]). Thus, the agency may not attempt to cobble together shorter periods of time in order to satisfy the statutorily required one year period.
Furthermore, the one year period of diligent efforts must occur simultaneously with the parent's failure to plan and/or visit. The statute is specific that the parental failures must occur "notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship...[emphasis added]" (Social Services Law §384-b [7][a]).
[*8]
Counsel for DHHS argues that the agency made diligent efforts from December 2002 through September 2003, as well as from August 1999 through April 2000. The latter time period was covered in the first permanent neglect petition, which was dismissed and thus has been previously addressed. The former period falls short of the required one year period.
 DHHS also suggests that, notwithstanding the court's prior findings to the contrary, that the court should now find that diligent efforts were made because the agency provided visitation for the respondent with a Spanish speaking worker from Ibero between May 2001 and September 2003. Even if the prior findings were not binding on the agency, providing visitation alone does not satisfy the agency's responsibility to offer help aimed at ameliorating the problems that caused the child to be removed from home (see Matter of Jamie M,, 63 NY2d 388, 394 [1984]; see also Social Services Law §384-b [7][f]).
From April 2000 through the end of December 2002, when Richard Jacobs was the assigned caseworker the agency "failed to adequately address respondent's language difficulty"
(see Matter of Richard W., 265 AD2d 685 [3rd Dept. 1999]). The prior decisions of the court document in detail Ms. E.'s need for Spanish speaking service providers. It was not until mid-2001 that DHHS arranged for an interpreter to be present at visitation to interpret for the caseworker and Ms. E.. The necessary evaluations and counseling with Spanish speaking therapists were not arranged in a timely manner. There was no proof that the Spanish speaking services that were finally available to Ms. E. by January 2003 were arranged with any help from DHHS.
Caseworker Richard Jacobs testified that there were difficulties in obtaining Spanish speaker therapists for Ms. E., caused in part by the respondent's lack of insurance. Where a parent is without financial means to effectuate a plan she will not be penalized for her failure to plan for her children (Social Services Law §384-b (7) (c); see also Matter of Jamie M., 63 NY2d 388 [1984]). DHHS did little to assist Ms. E. with the insurance problems, which contributed to the dismissal of the first permanent neglect petition concerning Jaime, as well as the multiple adverse findings in permanency hearings.
It was not until June 2001, as Jaime approached his second year in foster care, that Gladys Rivera from Ibero was hired by DHHS to interpret for Mr. Jacobs and to help supervise visitation. Ms. Rivera, however, was very clear in her testimony that she was not hired to provide other help to the respondent.She did not model good parenting for the respondent nor was she involved with the service plan.[FN2]
Since the agency has failed to prove diligent efforts for a continuous period of twelve months concerning Jaime the petition must be dismissed (Matter of Sheila G., 61 NY2d 368 [1984]).
The result of the repeated failings of DHHS to provide the needed assistance to Ms. E. and her son can only be described as devastating. Not only was Ms. E. denied meaningful help in solving her problems and strengthening her relationship with her son, Jaime has effectively been denied his right to have a stable home, either with his mother or in an adoptive placement. A [*9]permanency hearing to review Jaime's foster care placement is due later this year. It is the court's hope that all parties will work together to assure that the needed help is available to this family so that Jaime can be assured a permanent home.
Order to be prepared by respondent's counsel on notice to petitioner's counsel and the law guardian.
Signed at Rochester, New York on the 6th day of August, 2004.
E N T E R,
________________________________JOAN S. KOHOUT
Family Court Judge

Footnotes

Footnote 1:At a point after the petition in this case was filed, DHHS filed a petition alleging that Ms. E. violated the suspended judgment order regarding the older children. After a hearing, the petition was sustained and parental rights terminated for the five oldest children. Proof of diligent efforts was not required to terminate parental rights on that petition since permanent neglect had already been established and the hearing on the violation was part of the dispositional stage of the case (see Matter of Patricia O., 175 AD2d 870, 871 [2nd Dept 1991]).

Footnote 2:Mr. Jacobs testified that Ms. Rivera modeled parenting for the respondent and implied that she actively participated in the visits. Ms. Rivera testified that she only interpreted for the caseworkers and took notes on what she observed.