OPINION OF THE COURT
Michael L. Hanuszczak, J.
The Onondaga County Department of Social Services moved this court, pursuant to section 1039-b of the Family Court Act, for an order that reasonable efforts are not required to reunite the subject child with the respondents, who are his parents.
The subject child, born in August 2002, was removed from his home on February 6, 2003 and placed in foster care with the Onondaga County Department of Social Services on April 7, 2003. An order of fact-finding and disposition was filed and entered on May 19, 2004 adjudicating the subject child to be neglected, severely abused, and repeatedly abused. The subject child was placed in the custody of the Onondaga County Department of Social Services with the goal of reunification with his mother.
In its moving affidavit, the Department of Social Services alleges that the father was convicted and sentenced for a violation of Penal Law § 130.40 (2) in October 2003 against C.G., a half-sibling of the subject child. The Department states that the father was found to have neglected, severely abused, and repeatedly abused the subject child in the Onondaga County Family Court order filed and entered on May 19, 2004. The Department also alleges that the father’s parental rights to A.H., another half-sibling of the subject child, were involuntarily terminated in Onondaga County Family Court in September 2001. The Department alleges that the mother subjected the child to aggravated circumstances in that she was found to have neglected, severely abused, and repeatedly abused the child in an Onondaga County Family Court order filed and entered on May 19, 2004.
At the hearing on the motion, the Department offered four exhibits into evidence which were duly received by the court. Exhibit 1 is a copy of the Onondaga County Family Court order of fact-finding and disposition and permanency hearing, filed and entered on May 19, 2004. Exhibit 2 contains several documents, including a certificate of conviction from Onondaga County Court stating that the father had been convicted of a *853 violation of Penal Law § 130.40 (2), sodomy in the third degree* and was sentenced to 2 to 4 years in prison. Exhibit 3 is a copy of the Onondaga County Family Court order of fact-finding and disposition in which the father’s parental rights to A.H., a half-sibling of the subject child, are involuntarily terminated. Exhibit 4 is a certified compilation of police reports with statements from the victim and the parents.
Standard of Law
Section 1039-b of the Family Court Act authorizes the court to make a finding that reasonable efforts to return the child to the home are no longer required under certain circumstances, on motion from a social services official. Such circumstances include situations in which the parent of such child has subjected the child to aggravated circumstances as defined in section 1012 (j) of the Family Court Act, or the parental rights of a sibling of such child has been involuntarily terminated, unless the court determines that such efforts would be in the best interests of the child. In determining reasonable efforts, the health and safety of the child are the paramount concern.
Section 1012 (j) of the Family Court Act defines aggravated circumstances as where a child has been either severely or repeatedly abused as defined in Social Services Law § 384-b (8).
Section 384-b (8) of the Social Services Law states that a child is severely abused by the parent if the child has been found to be an abused child as a result of the parents committing or knowingly allowed to be committed a felony sex offense, such as Penal Law § 130.40 (2).
In Matter of Marino S., the Court of Appeals upheld a finding of derivative severe abuse, “predicated upon the common understanding that a parent whose judgment and impulse control are so defective as to harm one child in his or her care is likely to harm others as well.” (Matter of Marino S., 100 NY2d 361, 374 [2003], quoting Matter of Marino S., 181 Misc 2d 264, 276.) The Court also stated:
“The effect of a finding of aggravated circumstances under the Family Court Act — like the effect of a finding of severe abuse under the Social Services Law (severe abuse itself constitutes an aggravated circumstance) — is to dispense with the requirement *854 that an agency responsible for having placed the children in foster care or seeking to terminate parental rights exercise diligent efforts or reasonable efforts to reunite the respondent with the children.” {Id. at 369-370.)
With respect to the burden of proof, the movant has the burden to show that the circumstances warrant a finding of aggravated circumstances. The burden then shifts to the respondents to prove that continued efforts at reunification are in the best interests of the child. The evidentiary standard is clear and convincing. (Matter of Joseluise Juan M., 302 AD2d 219 [2003].) Fact-Finding
It is undisputed that the father was convicted and sentenced for a violation of section 130.40 (2) of the Penal Law in a case involving C.G., a half-sibling of the subject child. It is also undisputed that the father’s parental rights to A.H., a half-sibling of the subject child, were involuntarily terminated. The court takes judicial notice of its own order of May 19, 2004 in which both respondents were found, by clear and convincing evidence, to have neglected, severely abused, and repeatedly abused the subject child and his half-sibling, C.G.
Contained in the police reports are sworn statements by each of respondents which contain admissions regarding their acts and omissions with respect to the sodomy and sexual abuse of C.G. by the father over a three-year period and the mother’s knowledge of such acts and failure to protect the child or to notify the appropriate authorities of this criminal conduct.
The attorney for the respondent father called Paul Gray, the father’s counselor in prison, to testify telephonically. Mr. Gray testified that the father participates in a sex offender program run by Mr. Gray at the prison and that PH. fits the criteria for the label of pedophile. The father began the sex offender program on July 27, 2004 and is expected to graduate on January 26, 2005. Mr. Gray testified that the father has been compliant with assignments and has earned an improved rating in the program. Mr. Gray testified that the father functions as a 12- or 13-year-old person, exhibits violent and predatory conduct, and is emotionally insecure and stressed. On cross-examination, Mr. Gray testified that he has a Master’s degree in social work and is a licensed and certified social worker and completed a one-month program in training sexual offenders. He is not a certified sex offender therapist but stated that he reads extensively in the area. Mr. Gray also testified that he has a private practice but gave no details as to its nature or clientele.
*855 The mother testified that she has been involved with the Department of Social Services and has been receiving services since 1988, including completion of a course in domestic violence. She testified that she witnessed the sexual abuse of C.G. on at least two occasions but did not call the police because she was afraid of the respondent, EH. She testified that EH. told her that he was having sexual relations with C.G. but that she “blocked out” what was happening. She also testified that she heard that EH. was a convicted sex offender and knew that he was involved in court proceedings for sexual abuse prior to allowing him to move in with her and her children. She admitted that she had asked a caseworker why EH. could not live with her after the children were removed and testified that she now resides with EH.’s brother and the brother’s wife.
In his summation, the attorney for the petitioner stated that a prima facie case had been made for no reasonable efforts to reunify the subject child with the mother and the father based upon the father’s conviction for sexual abuse, the father’s prior termination of parental rights, and the adjudication of severe abuse. With respect to the mother, the attorney for the petitioner argued that the mother subjected the child to aggravated circumstances by her failure to protect the child’s sibling from sexual abuse and by her adjudication of severe abuse. The attorney for the mother argued that the mother failed to act in preventing or reporting the sexual abuse because she is a victim of domestic violence and that she is receiving and cooperating in services. The attorney for the father argued that the Department had not contacted the father’s counselor and that the father had not been able to avail himself of services. The Law Guardian recommended that the motion be granted as to both respondents.
Analysis
As a prelude, the court has had the unique opportunity to observe the demeanor of the mother while testifying and to judge her credibility and to draw inferences as to her sincerity and veracity.
This court has no doubt of the sincerity of Faul Gray, the father’s counselor in prison. As a mental health professional, the court gives credence to Mr. Gray’s observations about EH. However, the weight of Mr. Gray’s testimony in predicting the future behavior of EH. is negatively impacted in that Mr. Gray is neither a certified sex offender therapist nor an experienced therapist in the area of treating sex offenders.
*856 With respect to the mother’s testimony, the court found her to be generally believable but dangerously lacking in parenting ability, even after many years of services and interventions.
The court also notes that there was no rebuttal testimony to the respondents’ admissions as contained in the police reports accepted into evidence.
The Department made a prima facie case for a no reasonable efforts finding against the respondent father based upon the certificate of conviction for the sexual offense, the termination of his parental rights to another child, and the adjudication of severe abuse. The respondent father made no credible showing that it would be in the best interests of the subject child to be reunified with him. Indeed, the father was convicted of child abuse and imprisoned when the subject child was approximately one year old.
With respect to the mother, this court finds that the Department has met its evidentiary burden for a no reasonable efforts finding based upon the mother’s own admissions that she knew of the sexual abuse of her son and did nothing and the adjudication of severe abuse against her. The court does not find it credible that the mother, who was participating in services during much of the time when the abuse occurred, could not tell a caseworker confidentially about the abuse or anonymously call the child abuse hotline. Although the mother asked for the return of the subject child and testified that she will continue in services, it appears to this court that the mother exhibits a pattern of placing her own well-being above that of her children, and her recent inquiries as to why EH. cannot live with her do nothing to reassure this court that she will ever be an adequate protector of this child.
Conclusions of Law
Accordingly, for all of the reasons stated herein, this court finds that the Department of Social Services has sustained its burden of proving by clear and convincing evidence that the respondents have subjected the child to aggravating circumstances and that the mother and the father have not met their burden to prove that it would be in the child’s best interests to work at reunification. A finding that no reasonable efforts are required excuses the Department from efforts at reunification between the child and the mother and the father.
Now, on motion of the Onondaga County Department of Social Services, it is hereby ordered that the motion for a finding that *857 no reasonable efforts are required to reunite the subject child with the mother or the father is granted, pursuant to Family-Court Act § 1039-b.

 When the father was convicted on October 29, 2003, Penal Law § 130.40 (2) was entitled “Sodomy in the third degree.” Effective November 1, 2003, the title of the statute was changed to “Criminal sexual act in the third degree.”