Matter of Jaime S. (2005 NY Slip Op 25260)

Matter of Jaime S.

2005 NY Slip Op 25260 [9 Misc 3d 460]

July 6, 2005

Kohout, J.

Family Court, Monroe County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Tuesday, November 29, 2005

[*1]
In the Matter of Jaime S., a Child Alleged to be Neglected. Enedina E., Respondent.
Family Court, Monroe County, July 6, 2005

APPEARANCES OF COUNSEL

Daniel M. DeLaus, Jr., County Attorney (James M. Paulino of counsel), for Monroe County Department of Human Services, petitioner. Nigos Karatas for respondent. Legal Aid Society (Edward J. Orlando of counsel), Law Guardian.

OPINION OF THE COURT

Joan S. Kohout, J.
On February 18, 2005, the Monroe County Department of Human Services (DHS) filed an order to show cause pursuant to Family Court Act § 1039-b requesting that it be excused from providing reasonable efforts to assist the respondent Enedina E. and her son Jaime. Additionally, DHS filed a notice of motion on April 11, 2005 supplementing the original papers and seeking a modification of the last foster care placement order made on December 21, 2004 to terminate or, alternatively, suspend visitation. The respondent opposes the requests of DHS.
In preparation for the trial of these matters, the court requested memoranda and argument of counsel regarding what burden of proof should apply at the section 1039-b hearing and what elements the petitioner must prove before the agency is excused from providing further assistance to the respondent. The court heard arguments of counsel on these issues on April 8, 2005 and rendered a decision from the bench on the same date. This decision clarifies and amplifies the court's oral decision.
[*2]
As further explained below, it is the court's view that reasonable efforts to assist the respondent may not be terminated under Family Court Act § 1039-b (b) (6) unless the petitioning agency proves by clear and convincing evidence that the parental rights of the respondent to a sibling have been involuntarily terminated and that continuing reasonable efforts would not be in the child's best interest, would be contrary to the child's health and safety and would not be likely to result in reunification in the foreseeable future.

Legal Background

Over the five years that Jaime S. has been in foster care, DHS has twice unsuccessfully attempted to terminate his mother's parental rights based upon allegations of permanent neglect (see Matter of Jaime S.E., 4 Misc 3d 1013[A], 2004 NY Slip Op 50866[U] [Fam Ct, Monroe County 2004]). Both permanent neglect petitions were dismissed because the agency failed to provide diligent efforts to assist Ms. E. and her son; more particularly, it was determined that DHS failed to arrange for Spanish-speaking counselors for Ms. E. or services aimed at preserving and promoting Jaime's cultural heritage (see Social Services Law § 384-b [7] [a]; see also Matter of Richard W., 265 AD2d 685 [3d Dept 1999]). Additionally, this court has made multiple findings in the context of yearly extension of placement and permanency reviews that the agency has failed to comply with court orders directing services for the respondent and her son (see Family Ct Act § 1055 [b] [iv] [A] [3]).
The most recent extension of placement and permanency review was decided on December 21, 2004. At that time, the court determined that DHS had again failed to provide reasonable efforts to assist the respondent and her son (see Family Ct Act § 1055 [b] [iv] [B] [4]; see also Family Ct Act § 1055 [b] [iv] [A] [3]). In light of the failings of the agency to assist the respondent, the court set the permanency plan as return to parent and established a service plan for the family. The service plan included substance abuse and mental health treatment for Ms. E., with a specific order that DHS pay for the cost of treatment. DHS was also ordered to help Ms. E. obtain stable housing. Finally, DHS was directed to consider whether a specialized parenting program, such as the Mount Hope Attachment Program, would strengthen Ms. E.'s relationship with Jaime and, if so, DHS was to arrange for an interpreter to assist the respondent to participate in the program.
No appeal was taken from any of the decisions described above. At no time during the prior proceedings did DHS argue that it should be excused from its duty to assist the respondent or that it would be contrary to Jaime's best interest that services and visitation continue.

Burden of Proof

The respondent argues that clear and convincing proof is constitutionally required as a matter of due process before DHS will be excused from its responsibility to provide reasonable efforts to assist her to reunite with her son (US Const 14th Amend; NY Const, art I, § 6). The court agrees. Although appellate courts have yet to rule on this issue, several trial courts have held that clear and convincing evidence is required (see e.g. Matter of Carl D., 195 Misc 2d 741, 745 [Fam Ct, Genesee County 2003]; Matter of Jasbin H., 184 Misc 2d 23, 25 [Fam Ct, Oneida County 2000]; Matter of S.H., 6 Misc 3d 851, 854 [Fam Ct, Onondaga County 2005]; Matter of Sarah B., 2003 NY Slip Op 50703[U] [2003]; Matter of Edwin L., 3 Misc 3d 1108[A], 2004 NY Slip Op 50495[U] [Fam Ct, Kings County 2004]).
While the burden of proof is set by statute in a wide variety of cases under the Family Court Act and Social Services Law, Family Court Act § 1039-b is silent on that issue. Family Court Act § 1046 (b) (i), for instance, requires that a finding of neglect or child [*3]abuse be based upon the preponderance of the evidence (see also Matter of Tammie Z., 66 NY2d 1 [1985]). Clear and convincing evidence is statutorily required to support findings of severe or repeated abuse, which may also provide a predicate for termination of parental rights (see Family Ct Act § 1031 [f]; § 1046 [b] [ii]; § 1051 [e]; see also Social Services Law § 384-b [8]). Clear and convincing proof is also required before parental rights may be involuntarily terminated (Social Services Law § 384-b [3] [g]).
As a prerequisite for federal reimbursement for foster care costs, the federal Adoption and Safe Families Act (ASFA) mandates that states excuse reasonable efforts to reunite a foster child and parent when parental rights to a sibling have previously been involuntarily terminated (42 USC § 671 [a] [15] [D] [iii]). New York amended its statute to comply with this requirement in 1999.
Various states have incorporated a clear and convincing proof requirement into their no reasonable efforts statutes with at least one other mandating by case law that clear and convincing proof is necessary before reasonable efforts to reunite the family may be terminated (see e.g. Ark Code Ann § 9-27-303 [45] [C]; Cal Welf & Inst Code § 361.5 [b] [11]; Conn Gen Stat § 17a-111b [a] [3]; Ga Code Ann § 15-11-58 [a] [4] [C]; La Children's Code art 672.1 [C] [4]; Md Cts & Jud Proc § 3-812 [b] [3]; [c]; Mont Code Ann § 41-3-423 [2] [e]; [4]; see also In re Jac'Quez N., 266 Neb 782, 669 NW2d 429 [Sup Ct 2003]).
When the State has involuntarily intervened and removed a child from parental care, it is necessary to balance the private interests affected, the risk of error in the procedure and the countervailing government interest in order to determine the constitutionally appropriate burden of proof (see Mathews v Eldridge, 424 US 319 [1976]; Santosky v Kramer, 455 US 745, 754 [1982]).
In this case, DHS wishes to terminate "reasonable efforts to make it possible for the child to return safely to his or her home" (Family Ct Act § 1039-b [b]). Agency assistance to parents generally includes services aimed at ameliorating the problems that caused the child to enter foster care including help in obtaining housing, counseling and facilitating visitation (see Family Ct Act § 1055 [c]; see also Social Services Law § 384-b [7] [f]).
The importance of the agency's responsibility to assist parents cannot be overstated. As a matter of public policy, the State, through its child welfare agency, is charged with the duty to provide services and assistance to help reunify families (Social Services Law § 384-b [1] [a] [iii]). This duty is grounded in the cultural assumption that it is "generally desirable for the child to remain with or be returned to the birth parent" (Social Services Law § 384-b [1] [a] [ii]). Furthermore, the relationship between a parent and child is constitutionally sensitive and "one of the most delicate of societal relationships" (Matter of Leon RR, 48 NY2d 117, 124 [1979]).
Moreover, whether or not the agency provides meaningful assistance to the parent "may have a profound [and] practical effect on what later may be viewed as the success or failure of the parents' efforts to plan for the future of the child" (Matter of Sheila G., 61 NY2d 368, 382 [1984]), thereby setting the stage for future termination of parental rights (see Social Services Law § 384-b [7]).
[*4]
Under the current statutory scheme contained in Family Court Act § 1039-b, the risk of an erroneous determination is considerable if only the minimal standard of proof is required. Family Court Act § 1046 (c) permits hearsay and otherwise incompetent proof in "all other stages of a proceeding" other than the initial determination of neglect or abuse. Thus, all that is required is that "material and relevant" evidence be presented in support of the motion.
The dangers presented by reliance on proof that is not tested by the usual legal standards of reliability are evident. Such testimony cannot be adequately challenged through cross-examination and is difficult for the court to assess. When no firsthand or objective evidence to support the agency's position is required, the burden ultimately falls on the parent to disprove the allegations.
While DHS clearly has a strong interest in protecting the best interests of neglected children in its care, it puts forth no interest in having a decision made upon less than reliable evidence. DHS argues that it would be contrary to Jaime's best interests to continue reasonable efforts to reunify him with his mother, but presents no interest that would be impaired by reliance on an enhanced burden of proof. There is no claim that there would be an increase in cost (cf. Matter of Lee TT. v Dowling, 87 NY2d 699 [1996]), or that any other public interest would be affected.
Nor does DHS argue that it would be detrimental to the child's best interest to require the higher burden of proof. To the contrary, it would seem to be consistent with the best interests of all parties for risk of an erroneous decision to be reduced by imposition of an elevated burden of proof.
Accordingly, the court having determined that Ms. E. has a constitutionally protected interest, that the risk of an erroneous determination is considerable given the statutory scheme that permits hearsay and other incompetent proof to be offered at trial and that no governmental interest has been presented that would tip the balance against requiring an enhanced burden of proof in this proceeding, the court finds that the proper and constitutionally required burden of proof is clear and convincing evidence.

Necessary Elements

Family Court Act § 1039-b was passed in 1999 when New York amended its statutes to comply with the requirements of the Adoption and Safe Families Act. Unlike many other states that simply lifted the language regarding the grounds for termination of reasonable efforts to reunite families from the federal ASFA statute, New York added substantive and procedural provisions. For example, while ASFA requires that states permit reasonable efforts to be terminated upon a finding by a competent court that parental rights to a sibling were involuntarily terminated (42 USC § 671 [a] [15] [D] [iii]), New York added the qualification that reasonable efforts must be terminated in such cases "unless the court determines that providing reasonable efforts would be in the best interests of the child, not contrary to the health and safety of the child, and would likely result in the reunification of the parent and the child in the forseeable future" (Family Ct Act § 1039-b [b]).
The issue presented here is whether once an involuntary termination of parental rights for a sibling has been proven must the petitioning agency also establish these additional elements or does the burden then shift to the parent to prove that reasonable efforts should not be ended.
[*5]
Trial courts have reached different conclusions on this issue. In Matter of Carl D. (195 Misc 2d 741, 745 [Fam Ct, Genesee County 2003]), the court held, without much discussion, that if termination of rights concerning a sibling is proven by clear and convincing proof then the burden of going forward shifts to the parent to show that the continuation of reasonable efforts is appropriate (see also Matter of June S., 183 Misc 2d 679, 682 [Fam Ct, Seneca County 2000]). The opposite conclusion was reached by the court in Matter of Sarah B. (2003 NY Slip Op 50703[U] [2003]), holding that the agency must prove all elements of the statute because a contrary interpretation of the statute would be inconsistent with the long-recognized responsibility of child welfare agencies to assist parents and children. In Matter of Edwin L. (3 Misc 3d 1108[A], 2004 NY Slip Op 50495[U], *1 [Fam Ct, Kings County 2004]), the court noted that "the burden ultimately falls on the agency to demonstrate that reasonable efforts are contrary to the best interests of the subject child . . . ."
The law guardian and DHS argue that Matter of Marino S. (100 NY2d 361 [2003]) supports their position that once the termination of parental rights regarding a sibling is proven the burden is on the respondent to prove that reasonable efforts should be continued. In particular, they argue that the statement by the Court of Appeals in Marino S. that the parent may "offer evidence to contravene the agency's request" in a severe abuse case (Matter of Marino S., 100 NY2d 361, 371 [2003]) means that the burden shifts to the parent in the case at hand.
Marino S., however, is distinguishable from this case and provides little guidance as to the required elements the petitioning agency must prove under Family Court Act § 1039-b (b) (6). An analysis of Marino S. shows that while the Court of Appeals indeed stated that parents had the right to present proof on a section 1039-b motion, it did not determine that the parent must bear the burden of proof at any point in the case.
The legislative history relating to the passage of section 1039-b indicates that the Legislature did not intend that the underlying law be changed (see Mem in Support, Bill Jacket, L 1999, ch 7). Prior to section 1039-b, child welfare agencies had the ability to argue that they should be excused from efforts to reunite foster children and their parents. In such instances, the burden was always on the agency to prove that assistance to parents should be terminated, whether in the context of a permanent neglect termination of parental rights case or a request to modify a neglect order under article 10 (see Social Services Law § 384-b [7] [a]; Family Ct Act § 1061).
Even before the 1999 ASFA amendments, Family Court had broad authority to terminate or modify service plans or visitation when it was consistent with the child's best interest (see e.g. Family Ct Act § 1061) and to excuse the failure of any agency to make diligent efforts in the context of a termination of parental rights case when it was proven that such efforts would be detrimental to the best interests of the child (see Social Services Law § 384-b [7] [a]). Moreover, the section 1039-b statutory scheme must be interpreted in the context of New York's long-standing commitment to helping parents who have lost custody of their children to foster care (see Matter of Sheila G., 61 NY2d 368, 385 [1984]).
If the agency is successful on its motion for a no reasonable efforts finding, the impact on the parent-child relationship is dire and almost inevitably places the parent just steps away from termination of parental rights. By terminating reasonable efforts, the court ends not only the agency's responsibility to provide services, but also the duty to facilitate and encourage visitation (see Family Ct Act § 1055 [c]). When services and visitation are ended, the parent's access to her child is also ended. Without access to her child or assistance to ameliorate the problems that contributed to the foster placement, there is little, if any, hope for reunification.
In this context, it is appropriate to place the burden of proof for all elements of the statute squarely on the agency. Had the Legislature intended that the burden shift, it most surely would have said so, especially since placing the burden on the parent to prove that terminating reasonable efforts would be contrary to the best interests of the child would present a major shift in New York law.
Moreover, the agency is in the better position to present evidence as to whether continued reasonable efforts should be excused based upon the child's best interest. Not only does the agency have greater resources at its disposal, it is the agency caseworkers who are charged with implementing the service plan and monitoring Jaime's foster placement and who most certainly will provide the essential proof at the hearing (see Matter of Fernando V., 275 AD2d 280, 282 [1st Dept 2000]). Furthermore, it is the agency that has access to the child for expert evaluation and counseling. Indeed, the agency employees would not normally be available for interview by counsel for the parent without specific permission from opposing counsel (22 NYCRR 1200.35 [a] [1]).
While the parent must be given an opportunity to be heard, to challenge the evidence presented and to, as the Court of Appeals notes, "contravene the agency's request" (Matter of Marino S., 100 NY2d 361, 371 [2003]), this by no means requires the burden of proof to shift from the petitioning agency.
It must also be noted that the petitioning agency need not rely on section 1039-b in order to excuse reasonable efforts. A termination of parental rights based on permanent neglect may once again be sought in this case, this time relying on the argument that diligent efforts to reunite were not required because they would be detrimental to the child's best interest (Social Services Law § 384-b [7] [a]). That element, of course, must be proven by clear and convincing evidence in order to warrant a finding of permanent neglect (Social Services Law § 384-b [3] [g]; see Santosky v Kramer, 455 US 745 [1982]).
In conclusion, in order to be successful on its motion to dispense with reasonable efforts, DHS must prove all elements of Family Court Act § 1039-b (b) (6) by clear and convincing evidence.